Nicholas Woodall
Po Box 194
Temperance Mi 48182
771-241-4590
stewartj4022000@gmail.com

IN THE UNITED STATES COURT OF APPEALS

FOR THE DISTRICT OF COLUMBIA CIRCUIT

RECEIVED

MAR 16 2026

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

NICHOLAS WOODALL,

Appellant,

v.

DONALD J. TRUMP, PRESIDENT, et al.,

Appellees.

Case No. 25-5259

MOTION FOR RECONSIDERATION

40a and 40b EN BANC

This filing runs over the page limit at 20, its filed a day late, but there is no appellant to prejudice, only the entire American people in denial of merits of this case that is assuredly qualifying of 40 (b)(2) exceptional importance and I beg you allow up to two weeks for me to provide the appendix of historical citings and exhibits, for the same reason, that the novelty of the constitutional claim and very principles and practices of this nation (and its courts) have been found to be in a clear deviation of their clearly historical and intended practice (though full correction considerations by me is impossible); It warrants court correction on the merits and as dutied to this judiciary to ensure the promises and benefits bestowed upon us by our founders are not further distorted or usurped where correctable.

forgive any inappropriate assertions or footnotes I have not excluded, I find them in some measure relevant to the petition right.

This reconsideration and en banc review is requested because the panel denied without substance the right to one of the most important rights in our nation, the right to petition for redressing of grievances, There was no fully formed opinion, no application of any historical tests or standards to show why the courts were abridging the petition clause What was offered was a singular art. 3 sec. 2 reference recontexting stating the courts are restricted to only "actual cases and controversies".

~~Because~~ They did not apply any test or explain where the petition right is denied. I now request rehearing to determine the courts duty in presentments of grievance petitions to the elect by filing them in the courts miscellaneous dockets, allowing the elect to respond back in those same dockets. Where I believe the courts denial would abridge the right as the Nation intended. This right of English common law tradition is foundational to our nation and one of the most sacred rights of our form of government, If en banc review is warranted in matters of importance, In matters of constitutional rights of the current time you will rarely if ever come across a more influential and impactfull case and it demands a full opinion explaining the peoples rights or limits.

The very matters I petitioned the US electorate and Supreme court about were the extreme deviations from what the early nations courts considered access to justice, Access to federal (and state) law libraries, Discovery rules that make litigation impossible for the middle and lower class, putting compensation out of reach for uncounted victims and other instances I hope will start a change back to the hybrid adversarial/inquisitorial/merit system our nation used to practice in civil courts, where the vicitm count is no longer just the parties of faults, the judiciary now maintains a victim count in their technical dismissals and the pricey cost of discovery preventing correction of injuries.. So I have done my best present an argument but the very nature of lack of federal resources has hindered me along with the short filing window.

Two reasonings are provided to assist the court in making this determination of the courts duty to record and facilitate to petitioning in the courts between the petitioner and the petitioned government.

First a historical right, that was offered as info in the original appeal, now formed to the historical tests I could find, absent the library access. Second, my understanding of where the courts unformed statement of a denial because of some article 3 sec.2 scenario has been argued against, where its believed the historical practice of the petition right combined with the aknowledgment of the Tutun test for what "a case is", Shows grounds that are favorable if not clearly asserting the right in absence of my legal knowledge, and ability to in the time perform historical research.

The 1st amendment historical and societally significant practice of petitionings being a duty placed upon the court is applied to the Tutun test and be they seperate or in whole reviewed the constitutional duty of the petition clause created a duty the same way congress created a naturalization duty for the courts.

That just as the colonists and founders repeatedly filed formal petitions for redressing with the King of Brittan and the privy councils of parliamentary being public records asking for remedy, humanity and civility of fair rule of laws; by right of the English bill of rights 1689 "without punishment"... The founders intended and did create the same and broader entitlement to accountability for the elect, judges, officials and entities of the government of this nation and its several states.

That while the obligation to respond in these matters is not contested, A duty to create and maintain the mechanisms or functions to facilitate the public presentment of the peoples grievances was mandated but never formalized. That the petition clause has been abridged removing the safeguards it was intended for; facilitating a usurpation of the power and rights of this government of the people. It must be resolved.

3

I realize I ask alot of you in doing your duty; But If you are unable or unwilling to perform this duty I ask you seek assistance from the supreme court or confirm an en banc review despite the loose nature of the assertions, where the novelty of constitutional rights has no guidance and neither do I without a full and informative ruling, You call it the Iron rule "IRONS v. DIAMOND 1981".

Where more fundamentally its also professed, Marbury v. Madison, 5 U.S. 137, 177 (1803) demands of the judiciary 'a remedy for every injury" and a ruling that can stand, something the panel very clearly did not give, regardless of reason for doing so. Which not only deprived me of a fair opportunity at a rehearing pleading, it acted to frustrate all future pleadings and possibly was intended to hinder me specifically if not the American people also.

PART I

THE HISTORICAL PRACTICE TEST ESTABLISHES THAT THE FIRST AMENDMENT PETITION CLAUSE PROTECTS THE RIGHT TO FORMAL GOVERNMENTAL RECEIPT AND PUBLIC RECORDING OF PETITIONS FOR REDRESS  (ABSENCE OF ANY OTHER ADEQUATE RECORDING MECHANISM)

I. THE GOVERNING FRAMEWORK: WASHINGTON v. GLUCKSBERG

In Washington v. Glucksberg, 521 U.S. 702 (1997), the Supreme Court held a claimed constitutional right must be (1) carefully described at the appropriate level of specificity, and then shown to be (2)(a) deeply rooted in the Nation's history and tradition, and (2)(b) implicit in the concept of ordered liberty. 521 U.S. at 720-21.

The right asserted here is precisely this: the right of a citizen to file a petition for the redress of grievances with the federal government and to have that petition formally received, assigned a docket entry, the docket kept open to facilitate responses and replies, and preserved in a permanent public record, so that the government's receipt cannot be denied and the government's response or non-response is publicly recorded, to do otherwise would abridge the petition right and prevent abolishment or modification requests from being historically recorded and tracked.  This is not a claim that the government must respond or grant relief. It is a claim that formal receipt and public recording is itself constitutionally mandated — the act that makes the petition clause constitutionally complete in these regards and government entities publicly accountable.

A. Step One — Careful Description of the Right Asserted

The right is narrow and historically precise. It is the peoples right and governments duty to provide an official, permanent, publicly accessible record of petitions received by the government — specifically, a docket entry in this Court's civil miscellaneous docket (a redressing filing), which is the only such record that satisfies

the historical requirement. It is not argued as a right to compel any branch to respond, act, or change policy. It is the right to proof of receipt in a form the government cannot disavow, allowing the people to alter their government and actors as they see necessary. [It is the very definition of our republic.]

B. Step Two, Element One — Deeply Rooted in History and Tradition

1. The Historical Practice: One Uniform Obligation Across All Institutions of Government From the English Privy Council through the founding of this Republic, every institution that received petitions for redress under Britan law maintained a formal public record of their receipt. The English Privy Council Registers, published as the Acts of the Privy Council of England and available in continuous series from 1386, record the receipt, referral, and disposition of petitions to the Crown by name of petitioner and subject matter. The Journals of the House of Commons, maintained since 1547 and published by the House of Commons, record the same for parliamentary petitions. [Historical source documents to be appended.]

The colonial American assemblies continued this practice without exception: The Journals of the Virginia House of Burgesses, the Journals of the Massachusetts General Court, and the journals of the several colonial assemblies each document the formal entry of petitions upon receipt. [Historical source documents to be appended.] The First US Congress institutionalized the practice in the Annals of Congress (and Debates and Proceedings in the Congress of the United States, 1789-1824, published by Gales and Seaton[2]), which document by petitioner name, subject matter, and date the receipt and referral of every petition received during the founding era. The significance of this practice is not that institutions recorded petitions.

2.      U.S. Constitution Article I, Section 5, Clause 3: "Each House shall keep a Journal of its Proceedings, and from time to time publish the same, excepting such Parts as may in their Judgment require Secrecy."

It is that the founding generation continued, a principle held in the Anglo tradition, even if it was unformed, later neglected, usurped, misunderstood, and ignored for prioritize of matters of imminent natures (like keeping the new nation alive to bring to fruition the intent of the founders and dealing with the inherent nature of humanities dangers: Absence of morality/education. Comforts people are quick to find; absent reasoning and information in their selfish/primal/cowardly nature.). The spirit and foundation of the petition right was first and permanently abridged and violated by the gag rule [see apendix]J.Q. Adams said "I hold the Resolution to be in direct violation of the Constitution of the United States, of the Rules of this House, and of the rights of my constituents"; [see apendix] Mr. Cushings of the House in debate against the gag of petitions citing Joseph Story as I did in the original appeal (see footnote 3) The "gag rules" inception and their eventual ending establishes the CLEAR DUTY intended and understood by this nations peoples and their servants. [The historical citings to be appended show], (A duty imposed, that the government has not just a duty to accept the petitions, they have a duty to respond, but only recording is requested of the courts)... But I continue, the gag rule defeat shows; The petition right is constitutionally complete only when entered into a permanent public record (and discussed, not at argue here). I am not arguing the congresses deficiency, its clearly a defunct performance. What is argued is the historical duty of the courts to perform their duty in regards to the historical practice, where the separation of powers did not foreclose the duty of government accountability, The clauses maximum ensured its undeniable duty upon all government.

Where here the most reasonable question is placed upon you: If a petitioner had filed a petition not heard in congress, in the court docket and requested, not commanded response during the gag rule, what would the courts response been.

---

3. "It (the right of petition )results from the very nature of the structure and institutions of a republican government; it is impossible that it should be practically denied until the spirit of liberty had wholly disappeared,and the People had become so servile and debased as to be unfit to exercise any of the privileges of freemen."

Would it be driven by party agendas, later rendering it moot, such as dred scott (1857) or would it have been sound, an affirmation of the RECORDATION DUTY (ignoring congress' duty) historically practiced and explained by Madison in 1789 to be recognized, on principle standing of the oppressions and subversions of liberty the 1st amendment stood against I say this question ignoring the speech and debate clause is where you might find the answer Marbury en-duties... In the historical practice of the petition right, A petition not recorded was a violation of the petition right "J. Adams" "Mr. Cushings" [see apendix]. The Declaration of Independence being cited, the history of courts admittance being cited and the courts duty to record is present if the legislative is in fault; the established standard against which the King's and Parliaments conduct was measured. The practice requiring transparency and accountability to the people, and that IS our form of government, regardless of the disruptions to administrative convenience, a ministerial duty.

2. The Petition Clause Codified a Government-Wide Obligation, Not a Branch-Specific One

The critical legal consequence of the historical practice of petitioning is established not by the history itself but by the Supreme Court's interpretation of the Petition Clause in California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972), by its several precedents and the first point assertions. The Court held that the right of petition "extends to all departments of the Government." 404 U.S. at 510. It runs to all departments of state and federal, all servants and entities subject to the peoples petitions, and the transparency of grievances is entitled by the clause if the petitioner chooses. Courts are departments of the Government, the petition clause in principle and history of transparency and accountability would be abridged by denial of the right to public recording in the courts that satisfies government accountability to the public for failure

the current political divides have been so narrow in this country for as long as i can remeber that the wins of US elect is in many offices repeatedly only a few percent win; if this alone does not profess the two parties who have seated every judge of this nation are only serving a slim majority at the frustrations of the 49% of the nation and if you have never written in to a congressional office about an issue that is of the 49% you do not possess the experience, which is why i offered a fraction of the generic responses I have recieved over the years. THe petition clause and its historical practice is for this exact scenario, where the englishmen said , we can no longer allow the king to ignore and hide our causes and from it they at the worry of death for the monarchy repeatedly enlarged their rights, even still the monarchy persisted in its acts from generation to generation... No different than an elect professing they are the representative of the people when their win was by but a slim margin.

to recognize issues of deemed importance, that being the publics notice their representatives may not be of sound mind and body fit to represent. It would establish the secrecy and suppression of discontent of this nation until like slavery the conflicts of rights deprivations and law enactment requests go unheard and distorted causing another rift between the peoples, or the notice of dangers present, reason for the clause.

The Petition Clause therefore runs to this Court directly, and this Court is a proper recipient of any petition for redress wished filed to government. California Motor Transport establishes that the Petition Clause obligation is government-wide. The history and historical practice establishes that the obligation is to record formally and publicly. The combination of these two propositions establishes that when a government entity is petitioned in the court, the court bears the recording obligation. This is the legal foundation of the court's duty: not an analogy to congressional practice, not a residual gap-filling function, but a direct constitutional obligation of presentment arising from the Petition Clause as interpreted by the Supreme Court (and Joseph Story) and argued affirmed in this appeal.

3. This Petition Was Addressed to All Three Branches: The Recording Obligation Falls on This Court (regardless the recipient)

My petition was directed simultaneously to the Supreme Court, the President and Vice, members and committees of the United States Congress, requesting that each respond to the grievances and remedies identified. No single branch was the sole recipient and it was hoped they would converse amongst each other to resolve the deprivations. The petition invoked all departments of the Government within the meaning. Where each party was made aware of the public filing, That they were not

the only parties petitioned and request for docketed response was made in multiple emails, informal and formal summons and calls. The question of which institution bears the recording obligation for a multi-branch petition that requests public accountability in transparency is answered by the act of filing. I filed in the federal district court. Under the uniform historical practice documented in Section I.B.1 ,the recording obligation attaches to the institution where the petition is placed.

The colonial courts received and recorded petitions and when necessary directed to the governor or legislature when those petitions were placed in the court's custody [ to be supplemented with an exhibit].

The English Privy Council recorded petitions addressed to the King and referred those requiring parliamentary action to Parliament — the recording function followed the act of filing, not the identity of the ultimate recipient. When I filed this petition in the federal court's civil miscellaneous docket, the court became the institution of receipt, and the recording obligation attached to it.

At this point I see the courts duty as affirming the right, or showing the founders intended to diminish the public practice of petition and had no intent on allowing and demanding public accountability by recording of grievances in the courts, I believe you can not show this,only that the founders rushed to put together the Constitution and government as best they could while holding to the principle practice and spirit of the petition clause as described by [appendix] Story: *"it speaks the voice of the people in the language of prohibition, and not in that of affirmance of a right, supposed to be unquestionable, and inherent."* Government shall not infringe on the natural right to petition, when the court is asked to facilitate debate between government and citizen, its at no right to deny and abridge the right. It must perform its duty of constitutionally mandated recording of petitions as a venue of public record keeping and redressing.

### 4. No Other Branch Maintains a Record Adequate to Satisfy the Constitutional Requirement

The constitutional requirement established by the historical practice is specific: a permanent, public, legally cognizable record that the petition was received. No branch of the federal government other than the courts presently maintains such a record for petitions of this character.

The House and Senate Journals, which historically recorded petitions by petitioner name and subject matter in the Anglo English tradition, no longer do so.

The federal rules petition process — through which proposed amendments to the Federal Rules of Civil Procedure and related rules are submitted — receives public comment but routes that comment through the rule making docket of the Judicial Conference, not through the public dockets of the courts, and does not create a publicly disputable record of individual petitions for redress (rule changes).

There is no public mechanism preserving in any format that creates the permanent public accountability the Petition Clause and practice historically required.

This Court's civil miscellaneous docket is the only mechanism in the federal government that produces what Petitioning historically demands: a permanent entry, publicly accessible to facilitate control of government and track long and repeated instances of grievances and the parties and entities of the governments response. Hiding them creates an abridgment of the right and endangers every right we posses.

The denial of docketing (as was done in the appeals panel previous decision) therefore does not redirect Appellant to an adequate alternative. It eliminates the right entirely; in so far as a petition is owed a public and historical accountability.

Under Boddie v. Connecticut, 401 U.S. 371, 380-82 (1971), denial of the only mechanism capable of satisfying a fundamental constitutional right cannot be justified by administrative inconvenience. Under Borough of Duryea v. Guarnieri, 564 U.S. 379, 388 (2011), barriers that effectively chill or foreclose the practical exercise of the Petition Clause right constitute abridgment. Elimination of the only adequate recording mechanism is abridgment per se.

C. Step Two, Element One — The State Constitutions Confirm Government-Wide Recording as a Founding Obligation and Expectation Of them

The constitutions of the original states confirm that the recording obligation was understood in a bare minimum, but the lack of articulation and thinking\agreements of the state drafters clearly are at question in their earliest legislative acts and draftings, but not in this sense of what they understood to be a federal government that was one of transparency and accountability with permanent public redress. Maryland's Constitution of 1776, Art. XI, declared every man's right to petition for redress. North Carolina's Constitution of 1776, Art. XVIII, and Pennsylvania's Constitution of 1776, Art. XVI, also asserting the principles. Vermont's Constitution of 1777 declared in Art. XLIII that the Declaration of Rights "ought never to be violated, on any presence whatsoever." Virginia's Declaration of Rights of June 12, 1776, Art. XV (and other states including Arizona), declare "a frequent recurrence to fundamental principles is absolutely necessary, to preserve the blessings of liberty." New York's Constitution of 1777 grounded the founding moment explicitly in the Crown's refusal to answer the petitions of the colonies, confirming that the Petition Clause was written to guarantee the practice the Crown had dismissed (or they expected to ask forgiveness later), formal governmental accountability by reccipt and recording. Its by no means an exhaustive list.

note (for discovery access a seperate claim being drafted, the court can disregard this note in determination of this appeal) griffin also speaks to the deprivation of access to discovery tools, a fundamental need in several pro se litigants litigation and where the evolution of the adversarial system of our nation with expert requirements and deposition needs to circumvent defendant summary judgments; as well as bring swift justice without delay... have in our adversarial systems evolution of precedent, been surpassed by the majority of nations who actually do give justice for all in principle (though they may have issues of judicial perversions as Americans do.) by their inquisitorial system of assignment of experts and guiding of discovery and depositions, practices not needed by early citizens in the laws simplicity and judicial courage while doing more to guide cases than the current docket clearer's do, dont forgive my assertions, rule on this cases merits as duty requires, and refute them when you must.

But these provisions are significant not merely as historical evidence but as proof that the founding generation understood the right to petition as imposing obligations on all levels of government to redress grievances. The language being further refined in the US Constitution petition clause as a right to petition the "government" in its entirety " a right that "ought never to be violated on any presence whatsoever" — confirming California Motor Transport's holding that the Clause runs to all departments.

### D. Step Two, Element Two — Implicit in the Concept of Ordered Liberty

The formal receipt and public recording of petitions for redress is implicit in ordered liberty for one reason that is practical rather than philosophical: without it, the Petition Clause is a right the government can nullify at will. A government that receives petitions privately and disposes of them privately faces no public accountability for its responses or its silences, but only upon great inconveniences of finance and cost to the petitioners and their supporters and communities. The founding generation understood this. The Declaration of Independence identified the King's failure to attend to petitions not as a failure of courtesy but as an inhuman act: it deprived the people of the accountability mechanism through which government is made answerable for its acts. A government that cannot be held publicly accountable for receiving or ignoring a grievance is a government that has effectively abridged the right to petition regardless of whether it has technically accepted the document. The docketing function is the constitutional minimum that separates a functioning right from a formal nullity.

## II. THE NOEL CANNING HISTORICAL-PRACTICE DOCTRINE: THE RECORDING OBLIGATION IS CONSTITUTIONAL GLOSS

In NLRB v. Noel Canning, 573 U.S. 513 (2014), the Supreme Court held longstanding historical practice — accepted by the founding generation, consistently followed by early Congresses, and treated as constitutionally obligatory — constitutes critical evidence of constitutional meaning and cannot be set aside without compelling reason. 573 U.S. at 524-26-.... Each of the three criteria is satisfied.

Criterion One: Accepted by the Founding Generation — The formal receipt and public recording of petitions was the established constitutional practice of every institution the founding generation built or inherited, documented in the Privy Council Registers, Journals of the House of Commons, colonial assembly journals, and Annals of Congress, cited in Section I.B.1. The Founders did not create this practice. They codified it.      Criterion Two: Consistently Followed by Early Congresses — The Annals of Congress (1789-1824) document without interruption the receipt, entry by petitioner name and subject, referral, and archiving of citizen petitions by the First and subsequent Congresse, all seemingly debated. The departure from this practice — the gag rule of 1836, House Resolution of May 26, 1836, 24th Cong., 1st Sess. — was immediately contested as a constitutional violation by members of Congress, most prominently by John Quincy Adams across multiple sessions, and was repealed on December 3, 1844. The declination was not constitutional, it was a usurpation of power and avoidance for convenience that I challenge this entire courts judiciary to disprove.      Criterion Three: Treated as Obligatory, Not Discretionary — The gag rule debates is the decisive proof of this criterion. The debates surrounding it all profess to an encroachment, that is as horrendous as the acts of Britan prior to the Declaration [ to be supplemented with exhibits].That the right of petition is the sign of a free people and a government of the people.  Adams's and Cushings constitutional objections, sustained by the eventual repeal, was for a dutied

petition right. The founding-era state constitutions' declarations that the right "ought never to be violated, on any presence whatsoever" confirm the mandatory character of the obligation.

The petition-recording practice satisfies all three Noel Canning criteria. It constitutes constitutional gloss on the Petition Clause. "Shall not be abridged" means, at minimum, that the government must formally receive and publicly record a petition directed to it. This is the operative meaning of the Clause, not an extension of it.

III. SYNTHESIS: WHY THIS COURT SPECIFICALLY BEARS THE DUTY

Three propositions, each independently established, converge to fix the recording obligation on this Court.

First, under California Motor Transport, 404 U.S. at 510, the Petition Clause runs to "all departments of the Government." This Court is a department of the Government. The obligation is therefore this Court's as a matter of direct constitutional command, not analogy.

Second, this petition was addressed to all three branches simultaneously. No single branch was the sole recipient, and no single branch bears the recording obligation. The recording obligation attached to the institution of filing, this Court upon the act of filing, consistent with the historical practice in which the recording function followed custody of the document.

Third, this Court's civil miscellaneous docket is the only mechanism in the federal government that produces the permanent, public record that the Petition Clause historically and presently demands and that satisfies the constitutional minimum. Every other branch's petition-handling process operates outside public docketing and produces no record of the character the Clause demands. Denial of an open docket does not

redirect me to an adequate alternative. It eliminates the right. Elimination of the only adequate mechanism for the exercise of a fundamental constitutional right is abridgment (not just by congress) under Boddie, 401 U.S. at 380-82, and Duryea, 564 U.S. at 388, without any sufficient justification having been offered.

## PART II

ARTICLE III, SECTION 2 PRESENTS NO BARRIER: NON-CONTENTIOUS JURISDICTION, LEGISLATIVE-DUTY ANALOGIES, AND THE FOUNDING HISTORICAL DUTY ESTABLISH THIS COURT'S OBLIGATION TO DOCKET

I. THE TUTUN FRAMEWORK FOR NON-CONTENTIOUS ARTICLE III JURISDICTION

The panel's dismissal rested on a single citation to Article III, Section 2 without explanation. The invocation assumes that the absence of an adjudication determination is fatal to jurisdiction. That assumption has been incorrect since before Tutun v. United States, 270 U.S. 568 (1926), which established that a non-contentious, ex parte proceeding is a proper Article III case when: (1) a petitioner invokes a right secured by federal law; (2) the court is required to receive the petition and follow regular procedure; (3) the court's act is final and not subject to revision by another branch; and (4) the proceeding requires a judicial act even without adversarial contest. 270 U.S. at 576-77. "The proceeding is not a suit inter partes. It is a proceeding ex parte ... But it is none the less a judicial proceeding and a case within the meaning of the Constitution." Id. at 577. The finality criterion derives from Hayburn's Case, 2 U.S. (2 Dall.) 409 (1792), United States v. Ferreira, 54 U.S. 40 (1851), and Gordon v. United States, 69 U.S. 561 (1865): the determinative question

is whether the court's act is final and unrevisable by another branch, not whether an adversary is present or the courts judiciary function is assigned by law.

A. The Tutun Test Applied to the Docketing Proceeding

Element One — Appellant invokes the First Amendment Petition Clause — a right secured by the supreme law of the land. The constitutional history demanding accountability and transparency of governmental acts cuts in favor of jurisdiction, not against it.

Element Two — The proceeding requires the court to accept the filing, assign a docket number, keep an open docket and preserve the documents. This is regular judicial procedure. It requires no adversarial briefing, no contested hearing, and no ruling on the underlying grievance. It is the same legally mandated administrative function ministerial act the courts perform when receiving any other petition: naturalization, habeas corpus, or probate duty assigned by congress or constitutional law. (though they do vary in duty)

Element Three — A docket entry is final and irrevisable. Once assigned, a docket number is permanent. The official record of receipt cannot be revised, overwritten, or rescinded in known circumstances. This satisfies the finality criterion more simply than the naturalization order in Tutun.

Element Four — The assignment of a docket number and creation of a permanent official record is a judicial act in the Tutun sense: the exercise of the court's institutional authority to create a publicly accessible, and binding record of a constitutional event. It is not advisory. It does not recommend a course of action to another branch. It is specific, final, and argued binding by the historical duty imposed on the courts by the Constitution, the same way the court was dutied with naturalization proceedings by later legislative acts.

All four elements being satisfied. The proceeding is a proper Article III case; even if the Tutun test is only persuasive, it is a clear showing of the duty that the judiciary possesses beyond what is simply and clearly mandated by Consititution and law.

## II. LEGISLATIVE-DUTY ANALOGIES: NATURALIZATION, MARRIAGE, DIVORCE, TESTIMONY PRESERVATION AND PROBATE

Tutun is the capstone of a well-established category of proceedings in which courts perform ministerial duties to facilitate the exercise of fundamental rights. Each of the titled analogizes to illustrate a legislative or constitutional assignment of a ministerial court function that maps directly onto the docketing obligation created by the petition clause in historical practice.

### A. Naturalization, Marriage and Probate Wills

A petitioner invokes a statutory right. The court administers the proceeding, makes a formal determination, or simply the clerk enters the result\documents in the public record. They are nevertheless a proper Article III case under Tutun, a duty under Obergefell v. Hodges, 576 U.S. 644 (2015). The docketing of a Petition Clause filing is structurally identical: constitutional right invoked, ministerial act performed, result entered in the public record. Tutun controls or guides.

## III. THE HISTORICAL DUTY CLOSES THE ARGUMENT

### A. The Duty Attaches to the Institution of Filing

The historical practice established in Part I confirms that the recording obligation attached to the courts. The colonial courts received and recorded petitions directed to the governor or legislature when those petitions were placed in the court's custody. The English Privy Council recorded petitions in the public accountability the oppressed Englishmen had demanded. When I filed this petition in the federal

district court, the court became the institution of receipt. The recording and open docket facilitation obligation attached at that moment, as it has attached to every institution of government that has received a petition for redress in the Anglo-American tradition.

B. The Gag Rule Establishes That the Right Belongs to the Petitioner

The gag rule episode — House Resolution of May 26, 1836; John Quincy Adams's objections across the 24th through 28th Congresses; repeal of December 3, 1844 — establishes the essential structural point. The constitutional condemnation of the gag rule was not that Congress violated its own recording procedure. It was that Congress abridged a right belonging to the petitioner. This is confirmed by the First Amendment itself: the Clause does not say Congress shall maintain its own recording practices. It says Congress shall make no law abridging the right of the people to petition. The right belongs to the people. The recording obligation belongs to the government as its constitutional duty to the people. When Congress refused to perform it, the right did not transfer to the petitioner to enforce elsewhere — the government's refusal became the abridgment. The same analysis applies here: this Court's refusal to reopen the docket is not a redirection to another branch. It is the abridgment. Further, The courts have no right to argue a facilitation of the duty because of administrative or financial burdens: The duty of the courts can not be denied for administrative convenience:Bounds v. Smith, 430 U.S. 817 (1977); Boddie v. Connecticut, 401 U.S. 371 (1971) Johnson v. Avery, 393 U.S. 483 (1969);"Administrative convenience cannot justify the total denial of the right to petition for redress of grievances."; Tennessee v. Lane, 541 U.S. 509 (2004);]

B. Denial of Docketing Is Abridgment Without Sufficient Justification

The First Amendment states that Congress "shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances." Under the

constitutional gloss established by the historical practice — confirmed by Glucksberg's tradition test and Noel Canning's practice doctrine — the right includes formal public receipt and recording. Refusal to docket eliminates the only recording mechanism adequate to satisfy that right. Administrative burden cannot justify this under Boddie, 401 U.S. at 380-82. The absence of adversarial controversy does not defeat jurisdiction under Tutun, 270 U.S. at 577. The absence of a compelling governmental interest[4] means the abridgment cannot stand under McDonald v. Smith, 472 U.S. 479, 482-83 (1985), and Borough of Duryea v. Guarnieri, 564 U.S. 379, 388 (2011) and United States v. Cruikshank, 92 U.S. 542, 552 (1875) defining our republican government as public, When petitions are not publicly recorded it preempts republican government corrections by reducing visibility and accountability.

C.     Arizona,Virginia's and others Principle of Recurrence Is the Constitutional understanding further warranting this court's correction: Virginia's Declaration of Rights of June 12, 1776, Art. XV, declared: "a frequent recurrence to fundamental principles is absolutely necessary, to preserve the blessings of liberty." This is not rhetorical. It is the founding generation's identification of the mechanism by which constitutional practice is corrected when it has drifted from constitutional obligation. The erosion of formal petition recording across two centuries of institutional convenience is precisely the drift this principle was written to correct, supporting the (9th Amendment) retention of the right. This Court's recognition of the docketing duty is the recurrence the Constitution itself commands.

CONCLUSION

This Court bears the docketing obligation for three independent and converging reasons. First, under California Motor Transport, 404 U.S. at 510, the Petition Clause

---

4. Ensuring party wins and government control to seat judges and pass laws, that are issues of narrow majorities is not a compelling intrest. Neither is any result that shows the actual number of citizens and lawyers unsatisfied with their judiciary or anyother branch of government or its members.

runs to all departments of the Government including this Court. Second, this petition was addressed to all three branches simultaneously; the recording obligation attached to the institution of filing upon the act of filing, consistent with the uniform historical practice in which the recording function followed the document. Third, this Court's civil miscellaneous docket is the only mechanism in the federal government that produces the permanent, public, legally cognizable record that the Petition Clause and its 3/4 millennium of practice historically required. Denial of docketing and a closed docket eliminates the right, in the sharing of duty this court has to ensure no abridgment occurs and public accountability exists, this court must accept its duty to facilitate, It can not claim to be separate from duty . No sufficient justification has been offered, and its not questioned but considered why this court has no duty to make public the publics petitions regarding current and future rules and procedures.

Under or with Tutuns guidance, the proceeding is a proper Article III case. Under Boddie, administrative burden cannot justify denial. Under Marbury v. Madison, 5 U.S. 137, 177 (1803), the duty to define clearly what the law is does not expire because the question is difficult. This Court should grant reconsideration, do so en banc to ensure a proper review and response, affirm docketing of petitions as a constitutional right in the courts and order the case reopened, to remain open to facilitate any responses, and issue a written opinion addressing the constitutional question presented, under Marbury it is this courts duty to do so.

Respectfully submitted by Nicholas Woodall on 3/11/2026

CLERK U.S. COURT OF APPEALS
FOR THE D.C. CIRCUIT
333 CONSTITUTION AVENUE NORTHWEST

WASHINGTON DC 20001
(000) 000-0000          REF:
INV:
PO:                          DEPT:

FedEx
Express

E

TUE - 17 MAR 5:00P
** 2DAY **

TRK# 8895 6935 6909
0201

SP TSGA

20001
DC-US    IAD

Envelope

Recycle me.

MAR 16

SCANNED BY
U.S. MARSHALS

